[Cite as *In re W.R.*, 2013-Ohio-555.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN THE MATTER OF:


W. R. and H. E.

ALLEGED NEGLECTED/
DEPENDENT CHILDREN

JUDGES:
Hon. Patricia A. Delaney, P. J.
Hon. William B. Hoffman, J.
Hon. Sheila G. Farmer, J.

Case No. 2012 AP 11 0064

O P I N I O N


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                            Pleas, Juvenile Division, Case No. 11 JN
                            00264


JUDGMENT:                   Affirmed


DATE OF JUDGMENT ENTRY:     February 13, 2013


APPEARANCES:

For Appellant Mother                For Appellee

JOHN BRECHBILL                      DAVID HAVERFIELD
ASSISTANT PUBLIC DEFENDER           TUSCARAWAS COUNTY JFS
153 North Broadway                  389 16th Street SW
New Philadelphia, Ohio  44663       New Philadelphia, Ohio  44663

For Father                          Guardian Ad Litem

E. MARIE SEIBER                     KAREN DUMMERMUTH
Post Office Box 108                 349 East High Avenue
Dennison, Ohio  44683               New Philadelphia, Ohio  44663

*Hoffman, J.*

{¶1}    Appellant L. E. ("Mother") appeals the October 5, 2012, judgment entered by the Tuscarawas County Court of Common Pleas ("TCJFS"), Juvenile Division, which terminated her parental rights, privileges and responsibilities with respect to her two minor children, and granted permanent custody of the children to Appellee Tuscarawas County Department of Job and Family Services.

## STATEMENT OF THE FACTS AND CASE

{¶2}    Appellant-Mother is the biological mother of W.R. (dob 10-06-09), and H.E. (dob 05-22-11).   The biological father of the children is T. R. ("Father").

{¶3}    On May 24, 2011, TCJFS sought and was granted custody of both children after it was learned that Appellant-Mother and Father were living together. Mother has a significant history of involvement with Tuscarawas County Job & Family Services, having previously lost permanent custody or legal custody of five other children due to her abuse of the children while she was intoxicated.  W.R. had been the subject of a case filed in Stark County Family Court that closed prior to the agency's most recent involvement wherein the child was placed with Father and Appellant-Mother was ordered to have no contact. Father moved in with Appellant-Mother and they had another child together, H.E.

{¶4}    An adjudicatory hearing was held on June 22, 2011, wherein Father stipulated to the filed complaint.  Appellant-Mother did not appear at said hearing. Testimony as to Appellant-Mother's lack of sobriety was presented to the court, ultimately resulting in the trial court entering a finding the children were neglected and dependent.

{¶5} At the dispositional hearing on July 19, 2012, the children remained in the temporary custody of the agency and a case plan was adopted. The proposed case plan set forth services for both parents. Father was ordered to have supervised visitation with the children at that time. No visitation was ordered for the Appellant-Mother at that time.

{¶6} Father's case plan included, inter alia, attendance and completion of anger management counseling, securing independent housing and obtaining verified employment.

{¶7} In April, 2012, as a result of the parents' failure to comply with and complete services set forth in their case plans, the agency filed a motion for permanent custody.

{¶8} Both Appellant-Mother and Father requested a six-month extension of their case plans, which were denied.

{¶9} Throughout the case, the agency had concerns about the relationship between the parents. Appellant-Mother entered residential drug treatment and left shortly thereafter again relapsing. She ultimately entered Harbor House again as a condition of a sentence handed down in Stark County. She remained at Harbor House until leaving 15 days before completing the program for reasons she described as drama in the house. She did ultimately reunite with Father.

{¶10} At a court hearing shortly before the full hearing on permanent custody, Appellant-Mother discussed with her case manager leaving Father over concerns his lack of case plan progress was impacting her ability to be reunified with her children. Unbeknownst to the agency, she and Father had already procured a marriage license

and were married shortly thereafter. Appellant-Mother ultimately disclosed she was pregnant with another child.

{¶11} The permanent custody hearing began on September 7, 2012, but could not be completed that date. Additional evidence was heard on September 26, 2012. The trial court then issued a judgment entry on October 5, 2012, granting the agency's permanent custody motion.

{¶12} It is from this judgment entry Appellant-Mother appeals[1], assigning as error:

**ASSIGNMENT OF ERROR**

{¶13} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS SAID DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶14} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

**I.**

{¶15} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of

---

[1] Father also raises the same assignment of error in a separate appeal, 2012 AP 10 0063.

the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578.

**{¶16}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶17}** In order to grant a request for permanent custody, the trial court is required to engage in a two-part analysis. First, as required by R.C. §2151.414, it must find that one of the factors below exists:

**{¶18}** (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

**{¶19}** (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent

agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶20} (b) The child is abandoned.

{¶21} (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

{¶22} (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶23} The trial court is then required to engage in an assessment of whether a grant of permanent custody is in the best interest of the child utilizing factors set forth in R. C. §2151.414(D) as follows:

{¶24} (D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

{¶25} (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶26} (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶27} (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶28} (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶29} (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶30} In the instant case, with regard to the first statutory criteria, the trial court found the children could not or should not be returned to either parent at the time of the litigation or within a year thereof.

{¶31} This determination requires the evaluation of another set of factors found in R.C. §2151.414:

{¶32} (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should

not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶33} (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶34} (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

**{¶35}** (3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

**{¶36}** (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

**{¶37}** (5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

**{¶38}** (6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

**{¶39}** (7) The parent has been convicted of or pleaded guilty to one of the following:

**{¶40}** (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

**{¶41}** (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

**{¶42}** (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

**{¶43}** (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

{¶44} (e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.

{¶45} (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

{¶46} (9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

{¶47} (10) The parent has abandoned the child.

{¶48} (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶49} (12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to

care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

{¶50} (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.

{¶51} (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶52} (15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.

{¶53} (16) Any other factor the court considers relevant.

{¶54} In the case *sub judice*, the trial court heard the following evidence as to whether the children could not or should not be returned home:

{¶55} Jaime Grunder, the ongoing case manager from the agency, testified regarding all of the other children of Mother who had previously been placed into the legal custody of other relatives. Ms. Grunder also authenticated a certified judgment entry from the Tuscarawas County Juvenile Court that terminated the parental rights of Mother to two prior children. (T. at 5-6). She also testified Mother had a history of abusing cocaine and had last tested positive for cocaine on September 23, 2011. On that date, she and the Guardian ad Litem had pulled Mother out of a crack house. (T. at 7).

{¶56} Ms. Grunder further stated to the best of her knowledge, Mother had remained sober since that date. (T. at 10). Mother had been at Harbor House for in-patient drug and alcohol counseling two times during the current case. She left after one month the first time early into treatment and relapsed thereafter. During her second stay, she completed almost the entire program, choosing to leave fifteen days before she was due to successfully complete same. (T. at 8).

{¶57} Ms. Grunder further testified to ongoing concerns regarding Mother's housing, noting she really had no idea where she was living. (T. at 11-12). She also expressed concern over the nature of and misrepresentations about her relationship with Father. She stated despite representations to the contrary, Father and Mother had been together since Mother left the Harbor House program in March of 2012. (T. at 13). Mother had represented at a trial court hearing prior to the permanent custody hearing she was contemplating leaving Father because his lack of progress was jeopardizing her ability to reunify with her children. However, at the time these representations were made, Father and Mother had already obtained a marriage license and were subsequently married. (T. at 24). Ms. Grunder articulated the agency was unable to view the progress made by Mother in a vacuum when she continued to be in a relationship with Father. (T. at 15).

{¶58} Ms. Grunder also testified as to Father's lack of progress on his case plan. She stated he did complete required CPR training and the agency's parenting class. (T. at 16). He did not complete a requisite anger management assessment and counseling. (T. at 16). He did complete a drug and alcohol assessment, but the agency believed he

had been largely dishonest in the process, reporting he did not drink but then later contradicting this statement. (T. at 18, 173).

**{¶59}** Ms. Grunder further testified Father never had any discernible employment throughout the case. He reported a number of jobs, but never provided verification of any. (T. at 19-20). She also expressed concern over his housing situation. While Father provided a number of alleged work addresses to the agency, none could ever be verified. (T. at 22). Additionally, Ms. Grunder stated that she made numerous attempts to locate Father at the home address he provided but was never able to verify he actually lived there. She further stated at one point in the case, the Father and Mother were denying living together despite the fact the agency's own transportation was picking them up at the same address. (T. at 28).

**{¶60}** Ms. Grunder also testified the agency had significant concerns about Father's constant lies. Ms. Grunder related incidents of asking Father a question and receiving an answer from him only to have Mother confront Father about the falsehood. (T. at 22). Father even lied in front of Mother about the fact he was married while both were wearing new wedding rings. (T. at. 25).

**{¶61}** During cross-examination, Father testified he lied because he did not want bad information about him to get out. (T. at 99).

**{¶62}** Ms. Grunder further testified regarding her objection to the requested six month extension. She opined Father had failed to demonstrate any follow through with some of the services on the case plan during the fourteen to fifteen months the case was pending, and she saw no reason to believe he would do it in another six months. (T. at 29, 60). She testified she regularly advised both parents of what services needed

to be done, including the need for Father to obtain employment and stable housing. (T. at 33).

{¶63} Star Jones, a chemical dependency counselor at Harbor House, testified next. Ms. Jones testified regarding Mother's involvement in their program. She stated Mother entered treatment the first time on July 12, 2011, and subsequently left on August 1, 2011, admitting cocaine abuse after she left. (T. at 70-72). She subsequently re-entered treatment in October of 2011, and left on March 4, 2011, when she simply failed to return from a pass. (T. at 72). Ms. Jones expressed concern over Mother's ability to maintain sobriety in light of her just walking out of treatment, as one of the goals of treatment is teaching individuals to meet their commitments. (T. at 75). Ms. Jones stated during her stay at Harbor House, Mother tended to focus her attention on others, failing to address her own issues. (T. at 79).

{¶64} The trial court also heard testimony from Father who was called on cross-examination by the agency. He testified he did not have a full-time job, but rather that he had multiple odd jobs. (T. at 96). He admitted to lying to the case worker throughout the case. (T. at 98). He attributed his actions to not wanting bad information to be known about him. (T. at 103). He further acknowledged he had missed multiple appointments that were scheduled to address the anger management component of his case plan. (T. at 98-100). He also testified he was not concerned about his alcohol abuse and the role it played in prior violent episodes between him and Mother. (T. at 111). He acknowledged not being honest about the role his alcohol abuse may have played in past altercations with Mother and admitted he did not report this information to the counselor doing his drug and alcohol assessment. (T. at 111).

**{¶65}** The trial court next heard testimony from Appellant-Mother, who was also called on cross-examination by the agency. Mother testified she left her residential drug treatment program fourteen days before completion because she was uncomfortable regarding the nature of a possible relationship between one of the other clients and an employee. (T. at 116). Initially, she tried to misrepresent the time frame of obtaining the marriage license with Father but later acknowledged the dates when confronted with the documentation. (T. at 118). She also acknowledged her decision to continue to engage in a relationship with Father was tantamount to choosing him over her children. (T. at 121).

**{¶66}** The trial court next heard testimony from Barbara Schwartz, a professional licensed to perform psychological evaluations. Ms. Schwartz testified regarding her assessment of Mother. She stated she completed her assessment in September of 2011. (T. at 131). She stated Mother only appeared for two of five scheduled appointments. (T. at 132). She stated she diagnosed Mother with an Axis 1 diagnosis of poly substance abuse and Axis II diagnosis of Antisocial Personality Traits and Dependent Personality Traits. (T. at 132). Ms. Schwartz opined Mother would require intensive treatment for her substance abuse problem, most likely on an inpatient basis. (T. at 133). She stated the substance abuse issue would need to be addressed first before further issues could be addressed. (T. at 134). Ms. Schwartz further testified Appellant's Antisocial Personality Traits would manifest itself as a belief generally accepted rules of conduct did not apply to her. (T. at 135). Ms. Schwartz testified she was conservative in her diagnosis, indicating Mother technically fit the criteria for an Antisocial Personality Disorder, a more severe diagnosis. (T. at 136). With regard to her

Dependent Personality Traits, the disorder would manifest in terms of a need to be taken care of and gravitation toward relationships that were not healthy. It was her opinion a person with these disorders will not protect his or her children from the person they are dependent upon. (T. at 137).

**{¶67}** Ms. Schwartz stated she had not seen Mother since completion of her assessment; however, she testified she would view her marriage as evidence of her falling into historical patterns of behavior. (T. at 137). She further testified Mother had a poor prognosis as to ever changing. (T. at 139-140). Ms. Schwartz also clarified Mother's substance abuse issues were separate from the personality disorders and simply addressing the drug problems, while important, would not automatically correct her other problems. (T. at 145-146).

**{¶68}** Father was again called to testify, this time on direct examination by his attorney. By the second hearing date, he had obtained employment, having worked for two weeks. (T. at 164-165). He also relayed his history of violence with Mother. (T. at 177). This testimony was contradictory to the history provided to the person who conducted his drug and alcohol assessment.

**{¶69}** Mother was also called back to the stand to testify by her counsel. During questioning by the trial court after a recess, she acknowledged she had lived in much more difficult situations than the one she chose to leave at Harbor House. (T. at 220). She acknowledged the problems faced by the trial court as to her sobriety and the choices she had made. (T. at 220).

**{¶70}** In its Judgment Entry, the trial court recounted Mother's history of having previously lost permanent custody of two children and legal custody of three others.

Further, the trial court stated Mother has a "very long, horrendous history of alcohol and cocaine abuse" and gave an account of one occasion where she had to be removed from a crack house by the guardian ad litem. Further, the court recounts this case began when Mother tied her children in bed and left them alone while she went out. (Oct. 5, 2012, Judgment Entry at 1). The court went on to find Mother's "continued attitudes and life choices still put her at great risk of relapse." The trial court also found Mother's actions in leaving her in-patient treatment program prior to completion "demonstrates the same lack of commitment that she has shown since 2005." *Id.* at 2. Finally, the trial court found both father and Mother "continue to demonstrate pervasive, maladaptive behavior and have made no long lasting changes in their lives that would reasonably ensure the safety of any child in their care." (Oct. 5, 2012, Judgment Entry at 3).

{¶71} Based on the foregoing, this Court finds there was competent, credible evidence to support the trial court's decision to terminate the parental rights of the parents and place these children in the permanent custody of the agency and the same was not against the manifest weight of the evidence.

{¶72} Appellant's sole Assignment of Error is overruled.

{¶73} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.

By: Hoffman, J.

Delaney, P. J., and

Farmer, J., concur.

_____

_____

_____

                                        JUDGES

WBH/d 0130

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:                          :
                                           :
   W. R. and H. E.                         :          JUDGMENT ENTRY
                                           :
   ALLEGED NEGLECTED/                       :
   DEPENDENT CHILDREN                      :          Case No. 2012 AP 11 0064

For the reasons stated in our accompanying Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.

Costs assessed to Appellant.

_____

_____

_____

JUDGES